## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| BITRESERVE, LTD. and HALSEY MINOR, | : | |
| | : | Case No. |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| BITGOLD, INC., KEVIN BARNES, | : | |
| JOSHUA CRUMB, and ROY SEBAG, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiffs Bitreserve, Ltd. ("Bitreserve") and Halsey Minor ("Minor") assert this Complaint against Defendants BitGold, Inc. ("BitGold"), Kevin Barnes ("Barnes"), Joshua Crumb  ("Crumb"), and Roy Sebag ("Sebag"), and allege:

1.      Plaintiff Bitreserve currently offers a digital financial service to the public through its website www.bitreserve.org.  Defendant BitGold began offering similar services to the public on February 13, 2015.

2.      Between December 1 and 12, 2014, BitGold's principal Sebag emailed Bitreserve's President Tim Parsa, apparently infuriated because Bitreserve had begun using the mark "Bitgold" in connection with its services.  Sebag falsely stated to Bitreserve:

    a.  "BitGold Inc…has registered trademarks for 'BitGold' in the US and Canada." (BitGold did not own any trademarks registered in the United States Trademark Office or the Canadian Trademark Office.)

    b.  "I have already taken screenshots of your web-page where you claim to have the trademark for 'Bitgold' which is an impossibility as no such trademark has been filed."  (Bitreserve did not claim to own a trademark registration for "BitGold" and its actions were in no way improper.)

4707405 v1

      c.    "[W]e will not allow you to peddle a high risk product that infringes on our company name and product when the two couldn't be more different." (There was no infringement.)

      d.    "[Y]our actions confirmed our suspicions: that you were falsely using [Bitgold] stating you owned a trademark when you didn't…In the USA, false designation of a term…is considered to be 'trademark fraud' that can kill the registrant's rights in the trademark…" (There was no fraud or false claim.)

      e.    "[B]ased on what we see here we will be pursuing significant legal action against BitReserve expeditiously." (BitGold did not have valid claims and no legal action has been pursued to date.)

3.     At the time of the emails, BitGold was not yet using "BitGold" in commerce in the United States in the ordinary course of business.

4.     A few days later, Barnes posted defamatory articles about Bitreserve anonymously on multiple websites. Like Sebag's email, Barnes' posts took issue with Bitreserve's introduction of the "Bitgold" service and Bitreserve's supposed "intention to start offering unregulated securities purportedly backed by physical commodities." Among other things, the posts falsely accused Bitreserve and its chief executive officer, Halsey Minor, of fraud.

5.     Plaintiffs then received information tracing the anonymous posts, which were made under the username "BitreserveFraud" to Barnes. Plaintiffs' further investigation revealed that defendants Sebag, Crumb and Barnes are all affiliated with one another.

6.     Defendants Sebag, Crumb and Barnes all communicated during the December 8-16 time period leading up to the posts.

7.     Barnes sent Sebag and Crumb a copy of what Barnes intended to publish about Plaintiffs before the posts were published.

2

4707405 v1

**Parties**

8.      Plaintiff Bitreserve is a Cayman Islands company with its principal place of business in San Francisco, California.

9.      Plaintiff Minor is a resident of California and *sui juris.*

10.     Defendant BitGold is a Canadian corporation with its principal place of business in Ontario.

11.     Defendant Barnes is a resident of New York and *sui juris.*

12.     Defendant Crumb is a resident of Canada and *sui juris.*

13.     Defendant Sebag is a resident of Canada and *sui juris.* Upon information and belief, Sebag also regularly conducts business in New York.

14.     Plaintiff Bitreserve is a cloud-based financial service that bridges cryptocurrencies, such as bitcoin, assets (currencies, commodities, securities), enabling its users to convert volatile bitcoin into more stable virtual assets (e.g., bitgold, bitdollars, bityuan) whose value is substantiated by a full reserve of real assets (e.g., gold bullion, dollars, yuan). Bitreserve was founded in 2013 by Minor, an Internet and tech pioneer, who has founded and/or financed many well-known tech ventures, including CNET, Vignette, Salesforce.com, Grand Central (later rebranded after its sale to Google as Google Voice), Rhapsody, and OpenDNS.

15.     Bitreserve was initially financed by a group of high-net-worth individuals and institutional investors via two rounds of capital raising—Seed and Series A—with the Series A round valuing the company at $50 million. As part of its most recent $12 million Series B round of financing, Bitreserve made the strategic decision to open its financing to non-institutional investors via two crowd-funding sites: Crowdcube for U.K.-based investors and Venovate for qualified U.S. investors.

3

4707405 v1

16.     At all times relevant to this action, Tim Parsa was the President of Bitreserve.

17.     At all times relevant to this action, Minor was the CEO of Bitreserve.

18.     At all times relevant to this action, BitGold was a competitor or prospective competitor of Bitreserve's.

19.     Upon information and belief, at all times relevant to this action, Sebag and Crumb were officers of BitGold.

20.     Upon information and belief, at all times relevant to this action, Sebag and Crumb were agents and/or employees of BitGold.

21.     At all times relevant to this action, Sebag and Crumb were acting within the course and scope of their employment and/or agency with BitGold.

**Jurisdiction and Venue**

22.     This Court has personal jurisdiction over Barnes because he is a resident of New York.

23.     Upon information and belief, the Court also has personal jurisdiction over the other, non-resident, defendants pursuant to the Federal Rules of Civil Procedure and New York's long-arm jurisdiction statute because they regularly transact business in this state and/or contract to supply goods or services in the state.

24.     Moreover, upon information and belief, the non-resident defendants conspired with Barnes to commit acts that constituted tortious interference, unfair competition, and unfair trade practices in this state. In doing so, Barnes was acting as the non-resident defendants' agent committing acts in the state of New York. Barnes' statements were published in New York, were capable of being accessed, and in fact were accessed, by citizens and/or residents of New York, causing injury to Plaintiffs in New York.

4

4707405 v1

25.     Venue is proper in this district under 28 U.S.C. 1391 because Barnes resides in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

26.     Jurisdiction is proper in this district under 28 U.S.C. § 1331, § 1338, and § 2201.

27.     This Court has supplemental jurisdiction over Plaintiff's non-federal claims, pursuant to 28 U.S.C. § 1367, because these claims are so related to the federal claims that they form a part of the same case or controversy under Article III of the United States Constitution.

**Factual Background**

28.     As stated above, on or about December 1, 2014, Parsa received an e-mail from Sebag (with Crumb copied) accusing Bitreserve of infringing on BitGold's "BitGold" trademark through Bitreserve's use of the term "bitgold." The e-mail also implied that Bitreserve was selling unregulated securities.

29.     In a reply to Sebag's email, Parsa informed Sebag that Bitreserve was not infringing on any trademarks belonging to BitGold, copying Bitreserve's trademark counsel, Steve Abreu. Nevertheless, on or about December 12, 2014, Parsa received a second e-mail from Sebag, again accusing Bitreserve of trademark infringement and threatening Bitreserve with legal action if it did not cease using the term "bitgold."

30.     In reply to Sebag's second email, Parsa once again informed Sebag that Bitreserve was not infringing any trademarks belonging to BitGold, again copying Steve Abreu.

31.     Unbeknownst to Parsa, upon information and belief, Sebag and Crumb had begun collaborating with Barnes to draft and publish two texts that falsely accuse Bitreserve of, among other things, engaging in the sale of unregulated securities and attempting to defraud investors, and accusing Minor of being a serial fraudster.

4707405 v1

32.     On or about December 14, 2014, in collaboration with Sebag and Crumb, Barnes created accounts under the pseudonym "BitreserveFraud" on the blogging platform Blogger, the social sharing site Reddit, and the document-sharing platform Scribd.

33.     Later on December 14, Barnes contacted Crowdcube, an online crowd-financing platform that Bitreserve was using to open its Series B financing to non-institutional investors, and requested a copy of Bitreserve's business plan.

34.     Barnes registered as a member of Crowdcube (a requirement for requesting the business plans of companies raising capital on the platform) the same day he requested Bitreserve's business plan.

35.     Upon information and belief, Bitreserve's business plan was the only one that Barnes requested.

36.     On or about December 16, 2014, Parsa was notified by Crowdcube that an individual with the email Kevinrbarnes@gmail.com had requested a copy of Bitreserve's business plan.

37.     The aforementioned e-mail address belongs to Defendant Barnes.

38.     That same day, on December 16, 2014, Barnes, individually and/or in concert with Crumb and Sebag, published the texts he'd composed with Sebag and Crumb to Blogger, Reddit, and Scribd using the accounts created for that purpose. The first of the two texts, titled "Bitreserve: Offering Unregulated Securities," contains a series of false and defamatory statements about Bitreserve and Minor, including that:

  a.     Bitreserve was selling "unregulated securities purportedly backed by physical commodities;"

  b.     Bitreserve "appeared to be a terribly designed offering of unregulated securities that presents a clear and present danger to consumers, vendors, and financial

4707405 v1

intermediaries and thus should be immediately enjoined by financial regulators before further damage and fraud occurs;"

c. Bitreserve was engaging in "MF Global style broker fraud and malfeasance," and that "a diligent investigation raises several significant concerns about the platform's robustness and structure of its unregulated securities offerings."

d. Bitreserve was forced to pursue its most recent fundraising using a "wild-west style crowdfunding website;"

e. Minor, Bitreserve's CEO, was "forced to literally cross an ocean" to raise funds for Bitreserve's offering;

f. Bitreserve would need to register with the Commodity Futures Trading Commission in order to transact with any customers in the United States.

39. The second of the two texts composed by Sebag, Crumb, and Barnes, also published on or about December 16, 2014 by Barnes, individually and/or in concert with Crumb and Sebag, titled "Bitreserve: Founded by a Bankrupt Fraudster," include statements falsely accusing Minor of:

a. being a "serial bankrupt fraudster" who was "uniquely unsuited to serve a [sic] custodian for Bitreserve customers' digital currencies and physical commodities."

b. misappropriating assets from 12 Entrepreneuring Inc, a business incubator he started in 2000;

c. being a "tax-cheat" in the same league as "Girls Gone Wild" founder Joseph Francis, Mon B. Hom, a lawyer disbarred for stealing client funds in a trust account, and Randall E. Cohen, a Ponzi scheme operator who defrauded 27 people out of over $2 million;

d. using his hobby of art collecting as a means of committing fraud;

e. having a "history of misapproporiat[ing] other [people's] money and trust."

## FIRST CLAIM FOR RELIEF
## DECLARATION OF NON-INFRINGEMENT UNDER THE LANHAM ACT

36. Plaintiffs incorporate by reference each and every allegation of the paragraphs above.

7

4707405 v1

37.     A justifiable and actual controversy exists before this Court with respect to whether Bitreserve's current and continued use of the "bitgold" infringes any of BitGold's alleged rights under the Lanham Act, 15 U.S.C. § 1051 et. seq.

38.     Before it even launched its business, or had used the mark "bitgold" in the United States in the ordinary course of business, Defendants emailed Bitreserve threatening to file a lawsuit based on allegations of trademark infringement.

39.     Bitreserve's continued use of the trademark "bitgold" is not likely to cause confusion as to the source or sponsorship of Bitreserve's products and services or BitGold's products or services.

Bitreserve's continued use of the trademark "bitgold" does not infringe any rights of BitGold under 15 U.S.C. § 1114(1)(a) or . constitute unfair competition and/or false designation of origin under 15 U.S.C. § 1125(a).

WHEREFORE, Bitreserve requests a declaration from the Court that its continued use of the "bitgold" mark does not infringe any of Defendant's alleged rights under 15 U.S.C. § 1114(1)(a) or constitute unfair competition and/or false designation of origin under 15 U.S.C. § 1125(a).

**SECOND CLAIM FOR RELIEF**
**UNFAIR COMPETITION**

40.     Plaintiffs incorporate by reference each and every allegation of the paragraphs above.

41.     Defendants' conduct in conspiring to post, and in posting, the comments identified above was part of Defendants' improper campaign to penetrate the relevant commercial market, which is currently occupied by Plaintiffs.

42.     Defendants' statements concerning Plaintiffs and the services offered by Plaintiffs were false and misleading to consumers.

8

43.     Defendants' statements were intended to further the promotion and sale of Defendants' own competitive services.

44.     Defendants' acted in bad faith.

45.     Plaintiffs suffered injury as a result of Defendants' conduct.

WHEREFORE Plaintiffs request that this Court enter judgment in their favor, including costs, interest, punitive damages, and other relief this Court deems just and proper.

## THIRD CLAIM FOR RELIEF
## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
## DECEPTIVE TRADE PRACTICES

46.     Plaintiffs incorporate by reference each and every allegation of the paragraphs above.

47.     Defendants' conduct in conspiring to post, and in posting, the comments identified above was misleading to consumers in a material way.

48.     Defendants' actions are consumer-oriented and intended to penetrate the relevant commercial market occupied by Plaintiffs.

49.     Plaintiffs suffered injury as a result of Defendants' conduct.

WHEREFORE Plaintiffs request that this Court enter judgment in their favor, including costs, interest, statutory damages, and other relief this Court deems just and proper.

## FOURTH CLAIM FOR RELIEF
## DEFAMATION/CONSPIRACY TO DEFAME

46.      Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above.

47.      Between December 12 and December 16, 2014, on information and belief, Barnes, Sebag, and Crumb, entered into an agreement to unlawfully author and publish false and defamatory statements concerning Bitreserve on various internet sites, as more fully described

9

4707405 v1

above.

48.    Barnes, Sebag, and Crumb committed one or more of the following overt acts in furtherance of the conspiracy:

a.    authoring false and defamatory statements about Bitreserve;

b.    publishing false and defamatory statements about Bitreserve on the internet;

c.    coordinating the publication of false and defamatory statements about Bitreserve on the internet;

d.    organizing and planning the posting of false and defamatory statements about Bitreserve;

49.    Each of the aforementioned acts was done in furtherance of the conspiracy.

50.    Barnes, Sebag, and Crumb intentionally committed one or more of the aforementioned acts in furtherance of the conspiracy.

51.    Barnes, Sebag, and Crumb had actual knowledge of the wrongfulness of their conduct and of the high probability that it would damage Bitreserve.    Yet despite that knowledge, Barnes, Sebag, and Crumb intentionally conspired to author and publish the aforementioned defamatory statements and to defame Bitreserve, which caused Bitreserve to suffer economic and reputational damage.

52.    Each of the individual Defendants is personally liable for his tortious conduct.

53.    In addition, BitGold is vicariously liable for the acts of Crumb and Seebag.

54.    As a direct and proximate result of the publication of the aforementioned defamatory statements, Plaintiffs have suffered, and will continue to suffer, substantial damage to its reputation, lost profits, loss of good will, lost investment, and credibility within the technology, financial, and venture capital sectors.

4707405 v1

WHEREFORE Plaintiffs request that this Court enter judgment in their favor, including costs, interest, punitive damages, and other relief this Court deems just and proper.

## FIFTH CAUSE OF ACTION
## TRADE LIBEL/CONSPIRACY TO LIBEL

55.     Plaintiffs incorporate by reference the foregoing paragraphs of this complaint as if the same were set forth at length herein.

56.     The false, factual statements identified above were published in writing online and concerned Plaintiffs.

57.     Defendants acted with negligence or malice in conspiring to publish and in publishing the false statements concerning Plaintiffs.

58.     The statements were defamatory per se and caused Plaintiffs damages.

WHEREFORE Plaintiffs request that this Court enter judgment in their favor, including costs, interest, punitive damages, and other relief this Court deems just and proper.

## SIXTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH ECONOMIC ADVANTAGE

59.     Plaintiffs incorporate by reference the foregoing paragraphs of this complaint as if the same were set forth at length herein.

60.     Plaintiffs have contractual relationships and prospective contractual relationships with third parties that have been harmed by Defendants' statements.

61.     Potential investors have referenced Defendants' false and defamatory statements to Plaintiffs.

62.     Defendants' conduct was done with the sole purpose of harming Plaintiffs and/or was dishonest, unfair and improper.

63.     Upon information and belief, Bitreserve lost potential investors as a result of

11

4707405 v1

unlawful Defendants' conduct and tortious interference.

WHEREFORE Plaintiffs request that this Court enter judgment in their favor, including

costs, interest, punitive damages, and other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

By:

Date:  March 4, 2015

Darren H. Goldstein (N.Y. Bar. No. 1978501)
Alexis Arena (*pro hac vice* admission pending)
**FLASTER/GREENBERG PC**
295 Madison Avenue, 12th Floor
New York, NY 10017
T: 212.268.7111
*Attorneys for Plaintiffs*

12

4707405 v1